UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| BRUCE SULLIVAN, | : |
|     Plaintiff, | : |
| | : |
| v. | : Civ. NO. 3:05cv665(AHN) |
| | : |
| METRO NORTH RAILROAD CO., | : |
|     Defendant. | : |
| | : |

<u>ORDER ON MOTION FOR PROTECTIVE ORDER</u>

Plaintiff Bruce Sullivan ("Sullivan"), a former railroad engineer, brings this action against Metro North Railroad Co. ("Metro North") pursuant to the Federal Employer's Liability Act, 45 U.S.C. § 51. Sullivan alleges that Metro North's negligence caused injuries he suffered while working at Metro North's Stamford, Connecticut railroad yard. Now pending before the court is the Metro North's motion for protective order [doc. # 37], in connection with document requests served by Sullivan on Metro North's expert, Dr. Andrew Bazos ("Bazos").

This motion arises from Sullivan's efforts to take Bazos's deposition. Metro North timely disclosed Bazos as a testifying expert witness pursuant to Fed. R. Civ. P. 26(a)(2)(A). As part of this disclosure, Metro North provided Sullivan with Bazos's written report of his independent medical review of Sullivan's records ("IMRR") and independent medical examination ("IME") of Sullivan, as well as his fee schedule, curriculum vitae, and a list of his publications and cases in which he testified over the past five years.

In October 2007, Sullivan noticed Bazos's deposition. The notice contained twenty-one document requests, labeled "A" through "U."[1] Requests A through D seek tax returns or other financial documents showing Bazos's income from performing IMEs or IMRRs, testifying in court or in depositions, and practicing orthopaedic surgery since 2002. (Metro North's Mot. for Protective Order, Ex. A.) Requests E through H seek documents evidencing the number of times since 2002 Bazos has testified in court or in a deposition, including whether such testimony was on behalf of a plaintiff or defendant. (Id.) Requests I and J seek documents showing the number of times Bazos performed IMEs or IMRRs since 2002. (Id.) Requests K through P seek documents identifying each individual or entity that hired Bazos to perform IMEs or IMRRs since 2002, including the percentage of IMEs or IMRRs he performed on an annual basis for insurance companies and for plaintiffs. (Id.) Requests Q through R seek documents showing the number of IMEs or IMRRs that Bazos performed at the request of Metro North's counsel. (Id.) Finally, Requests S through U seek various documents related to the IME and IMRR performed by Bazos of Sullivan. (Id.)[2]

---

[1] At oral argument, Metro North waived its argument that Sullivan did not issue Bazos a subpoena duces tecum. Therefore, the court does not address that issue.

[2] At oral argument, Metro North withdrew its objection to producing Requests S through U, and therefore, the court will not address Metro North's arguments regarding those requests.

Metro North's motion seeks an order from the court that Bazos not be required to produce any of these documents or testify as to any of the matters in the document requests. Sullivan opposes any protective order on the ground that these requests seek documents that will lead to relevant and admissible evidence of Bazos's bias, that is, Bazos has a history of testifying for defendants and insurance companies in personal injury litigation and therefore has a financial interest in testifying favorably for Metro North.

Under Fed. R. Civ. P. 26(b)(1), a party may legitimately seek to discover information tending to show a witness's bias, but "as Rule 26(b)(2) instructs, the mere fact that such information falls within the scope of legitimate discovery does not mean that parties are entitled to unfettered discovery of impeaching information, by whatever means of discovery they seek." Behler v. Hanlon, 199 F.R.D. 553, 561 (D. Md. 2001). In particular, Rule 26(b)(2) permits the court to limit discovery methods otherwise permitted if the discovery would be burdensome, duplicative, unnecessarily costly, or insufficiently probative of the issues.

There is no question that the information sought by Sullivan is relevant to bias impeachment, and therefore, falls within the scope of permissible discovery under Rule 26(b)(1). See, e.g., Amister v. River Cap. Int'l Group, LLC, No. 00 Civ. 9708 (DCDF),

2002 WL 2031614, at *1 (S.D.N.Y. Sept. 4, 2002) ("[O]ther courts have ordered [compensation] disclosure . . . on the grounds that an expert's compensation is not protected by any privilege or work-product immunity, and that the extent of the expert's financial interest in the case may be relevant to bias."); Butler v. Rigsby, Civ. No. 96-2453, 1998 WL 164857, at *3-4 (E.D. La. Apr. 7, 1998) (stating that "courts have held that the amount of income derived from services related to testifying as an expert witness is relevant to show bias or financial interest" and citing cases); see also LNC Inv., Inc. & Charter Nat'l Life Ins. Co. v. First Fid. Bank, No. 92 Civ. 7584(CSH), 2000 WL 1182772, at *2 (S.D.N.Y. Aug. 21, 2000) ("In cross-examining [Plaintiff's] witnesses, counsel for Defendants are entitled to very considerable latitude in inquiring into circumstances that may show bias on the part of the witness in favor of the party calling him.").

Nevertheless, the court finds that the document requests are "overkill," as one court put it in a similar case. Behler, 199 F.R.D. at 562. While the court is not aware of any privilege preventing disclosure of this information, see Amister, 2002 WL 2031614, at *1-2, the requests exceed what is necessary to demonstrate Bazos's bias to the jury, threaten to open up collateral issues about proper expert compensation, will result in similar requests regarding other experts in the case, and may

cause qualified experts in future litigation to withhold their expertise for fear that opposing counsel will root around their financials records, searching for evidence of bias.  See, e.g., Behler, 199 F.R.D. at 562 (limiting discovery of financial information and case-related information because of these concerns); Wacker v. Gehl Co., 157 F.R.D. 58, 59 (W.D. Mo. 1994) (declining to order an expert to produce income tax returns, in part, because "permitting such indiscriminate discovery might well prevent many highly-qualified and objective experts from serving as witnesses, while yielding very little, if any, information which might aid the trier of fact").

This does not mean, however, that Sullivan's counsel cannot pursue these lines of inquiry at Bazos's deposition.  As to the personal financial information, "the jury readily should be able to assess possible bias on the part of an expert witness if they are made aware of the total percentage of his or her gross income that is earned from providing expert witness services."  Behler, 199 F.R.D. at 562.  Therefore, the court finds that so long as Bazos fully answers questions about the percentage of income he derived on an annual basis since 2002 from providing expert witness services, he need not produce his tax returns or other

financial information, as sought by Requests A through D.[3]  Cf. id.; County of Suffolk v. Long Island Lighting Co., 122 F.R.D. 120, 124 (E.D.N.Y. 1988) (ordering disclosure of the expert's best estimate of the total income he received from the plaintiff, as well as an estimate of the percentage of his professional income attributable to his work for the plaintiff).  Prior to appearing for the deposition, Bazos should review any records within his possession or control that would assist him in fully and accurately answering questions about the percentage of income he derived on an annual basis since 2002 from providing expert witness services.

As to Requests E through R, which seek documentation further detailing the extent of Bazos's work as an expert since 2002, the court finds that this information is more easily attainable through questioning of Bazos at his deposition.  Therefore, so long as Bazos can discuss in detail the extent of his work as an expert in any matter since 2002, as described in Requests E

---

[3] While Sullivan argued at oral argument that cases like Behler leave open the possibility that a court may order an expert to produce financial records in certain cases, the court does not believe that this is such a case.  Given that Bazos's bias can be sufficiently demonstrated to the jury by showing the percentage of his income that is derived from providing expert witness services, the requested financial documentation is unnecessary so long as Bazos provides these answers under questioning at his deposition.  Morever, as Sullivan explained at oral argument, at least some of the requested information was disclosed by Bazos in other litigation without a protective order, and therefore, Sullivan already has some of this information at his disposal.

through R, he need not assemble and produce records responsive to those requests.  Bazos's responses should be detailed enough so that Sullivan can track down any court records, if he so desires.

Consistent with the foregoing, the court DENIES IN PART AND GRANTS IN PART Metro North's motion for protective order [doc. # 37].  If, after taking Bazos's deposition, Sullivan believes that Bazos has not fully answered his questions to the best of his knowledge as required by this order or that documents from Bazos are still necessary to provide him with additional, non-duplicative bias impeachment of Bazos at trial, he may seek leave of court for additional discovery.

SO ORDERED this 30th day of November, 2007, at Bridgeport, Connecticut.

                              _____/s/_____
                              Alan H. Nevas
                              United States District Judge